UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

TED MORTON,

                Plaintiff,

       v.

COUNTY OF ERIE,

                Defendant.

_____

**DECISION AND ORDER**

1:16-CV-00617 EAW

## **INTRODUCTION**

Plaintiff Ted Morton ("Plaintiff"), the former elected Legislator for the Eighth District of Erie County, filed this action on July 29, 2016, bringing claims against Defendant the County of Erie ("Defendant" or the "County") related to the imposition of a $500 fine upon him by the Erie County Board of Ethics (the "Board"). (Dkt. 1). Plaintiff asserts a claim pursuant to 42 U.S.C. § 1983 ("§ 1983") for alleged violations of his due process rights, and he also requests a declaratory judgment that, among other things, his state and federal civil rights were violated and Erie County Local Law 10-1989 ("Local Law 10-1989") is *ultra vires*, invalid, and unenforceable. (Dkt. 25).

Presently before the Court are Plaintiff's motion for summary judgment (Dkt. 31) and Defendant's cross motion for summary judgment (Dkt. 36). For the reasons set forth below, Plaintiff's motion for summary judgment (Dkt. 31) is denied, Defendant's motion for summary judgment (Dkt. 36) is granted with respect to Plaintiff's federal due process

claim, and the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims.

## BACKGROUND

### I.    Procedural Background

Plaintiff filed this action on July 29, 2016, bringing claims for violation of due process, violation of equal protection, First Amendment retaliation, state law defamation and negligence, and seeking a declaratory judgment. (Dkt. 1). On October 14, 2016, Defendant filed a motion to dismiss Plaintiff's complaint. (Dkt. 6). Plaintiff filed an amended complaint on November 4, 2016, alleging the same causes of action as the original complaint with the exception of the equal protection claim. (Dkt. 8). Defendant filed a motion to dismiss the amended complaint on November 18, 2016. (Dkt. 11).

The Court held oral argument on June 28, 2017, and issued a ruling from the bench granting in part and denying in part Defendant's motion to dismiss. (*See* Dkt. 24 at 37-46). The Court dismissed Plaintiff's First Amendment retaliation claim without prejudice but denied the motion to dismiss as to all other claims. (*Id.*). The Court issued a Text Order on June 29, 2017, confirming its ruling from the bench, and noting that Plaintiff had been granted leave to file a second amended complaint on or before July 17, 2017. (Dkt. 21). The Court subsequently extended this deadline (Dkt. 23), and Plaintiff filed a second amended complaint on October 5, 2017 (Dkt. 25). Plaintiff repleaded his First Amendment retaliation claim and again alleged due process violations, negligence, and defamation, and sought a declaratory judgment with respect to his state and federal causes of action. (*Id.*).

On January 19, 2018, the Court entered a stipulation dismissing Plaintiff's First Amendment retaliation, defamation, and negligence claims with prejudice, pursuant to Federal Rule of Civil Procedure 41(a)(1). (Dkt. 34). The same day, Plaintiff filed the instant motion for summary judgment. (Dkt. 31). On February 20, 2018, Defendant filed a cross motion for summary judgment and response to Plaintiff's motion. (Dkt. 36). Plaintiff filed a reply in support of his motion on March 6, 2018 (Dkt. 38), and filed a response to Defendant's cross motion on March 20, 2018 (Dkt. 39). Defendant filed a reply in support of its cross motion on April 3, 2018. (Dkt. 40).

This Court held oral argument on the parties' motions for summary judgment on May 24, 2018. (*See* Dkt. 44). The Court reserved decision and requested additional briefing on the issue of whether the County's alleged violation of its own internal rules rises to the level of a constitutional violation under the Due Process Clause of the United States Constitution. Plaintiff submitted additional briefing on June 1, 2018 (Dkt. 45), and Defendant submitted its response on June 15, 2018 (Dkt. 47).

## II.    **Factual Background**

The essence of this case is a dispute over a $500 fine imposed on Plaintiff by the Board for Plaintiff's failure to correctly fill out a financial disclosure form. (*See* Dkt. 8 at 7). Plaintiff was formerly an Erie County Legislator, representing Erie County's Eighth District. (Pl. Stmt. at ¶ 2; Def. Stmt. at ¶ 2).[1] In May 2014, Plaintiff submitted his annual

---

[1]    "Pl. Stmt." refers to Plaintiff's Rule 56 Statement of Material Facts Not in Dispute. (Dkt. 31-3). "Def. Stmt." refers to Defendant's response to Plaintiff's statement of undisputed facts. (Dkt. 36-1).

financial disclosure form for calendar year 2013, as required by Local Law 10-1989, which establishes a code of ethics for Erie County. (Pl. Stmt. at ¶ 23; Def. Stmt. at ¶ 23). Plaintiff's financial disclosure form contained erroneous information. (Pl. Stmt. at ¶ 23; Def. Stmt. at ¶ 23). Plaintiff maintains that he mistakenly listed the debts he owed as of the date of filing rather than the end of the previous year, as required by the form. (Pl. Stmt. at ¶ 23). Plaintiff filed an amended financial disclosure form on October 13, 2015, in an attempt to correct his mistake. (Pl. Stmt. at ¶ 25; Def. Stmt. at ¶ 25). Before filing the corrected statement, Plaintiff had paid off several debts that he owed as of December 31, 2013. (Pl. Stmt. at ¶ 26; Def. Stmt. at ¶ 26 (denying knowledge)).

Plaintiff's financial disclosure form became an issue during his 2015 re-election campaign. (Pl. Stmt. at ¶ 24; Def. Stmt. at ¶ 24). The Board's Chair, Steven Schwartz ("Schwartz"), met with Plaintiff's legislative assistant, Robert Matthews ("Matthews"), in November 2015, and informed Matthews that the Board was "look[ing] into" the erroneous financial disclosure statement. (Dkt. 25 at ¶¶ 27-28). Schwartz then sent a letter to Plaintiff on December 7, 2015, requesting information concerning the debts noted in Plaintiff's form, as well as the dates of any repayment, among other things. (Pl. Stmt. at ¶ 27; Def. Stmt. at ¶ 27 (referring to the letter (Dkt. 14-5 at 2) for its contents)). In the letter, the Board took "no position . . . with respect to accepting any revised form and whether any violations of the Code of Ethics exist[]." (Dkt. 14-5 at 2). Plaintiff responded by letter on January 14, 2016. (Dkt. 14-6 at 2-3). In that letter, Plaintiff explained that he had misread the "when-as" dates on the form regarding any debts outstanding. (*Id.*).

On February 1, 2016, the Board sent a letter to Plaintiff informing him that it was imposing a $500 fine because it had "determined that a violation of the Ethics Code has occurred to the extent that you should have known that the statements made on the form were erroneous." (Dkt. 14-7 at 2). The Board's letter further stated that Plaintiff could file a request for reconsideration within 30 days. (*Id.*). By letter dated February 29, 2016, Plaintiff objected to and sought reconsideration of the Board's decision to impose the fine. (Dkt. 14-8 at 2). In his letter, Plaintiff argued that his error was not made "knowingly and willingly" or "with intent to deceive" and stated that Local Law 10-1989 provides a prescribed disclosure form that requires disclosure of debts "as of the date of the filing," a requirement with which Plaintiff's submission complied. (*Id.*). The Board affirmed its decision by letter on April 4, 2016. (Dkt. 14-9 at 2). Plaintiff again requested reconsideration. (Dkt. 25-1 at 56-57). The Board refused to alter its original decision, and Plaintiff informed the Board by letter that he would pursue legal action due to the Board's alleged violation of his state and federal rights. (*Id.* at 59).

## DISCUSSION

### I.    Standard of Review

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party. *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita*

*Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). Once the moving

party has met its burden, the opposing party "must do more than simply show that there is

some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come

forward with specific facts showing that there is a genuine issue for trial." *Caldarola v.*

*Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec.*, 475 U.S. at 586-

87). "[T]he mere existence of some alleged factual dispute between the parties will not

defeat an otherwise properly supported motion for summary judgment. . . ." *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

## II.    Plaintiff's § 1983 Due Process Claim

### A.    Legal Standard

Section 1983 provides a federal cause of action for an alleged deprivation of a

federal right by a person acting under color of state law. *Wimmer v. Suffolk Cty. Police*

*Dep't*, 176 F.3d 125, 136-37 (2d Cir. 1999). To prevail on a § 1983 claim, the plaintiff

must prove that the challenged conduct was attributable to a person acting under color of

state law, and that the conduct deprived the plaintiff of a right, privilege, or immunity

secured by the Constitution or laws of the United States. *Id.* A municipality or other local

government may be liable under § 1983 only "if the governmental body itself 'subjects' a

person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation."

*Connick v. Thompson*, 563 U.S. 51, 60 (2011) (citing *Monell v. Dep't of Social Servs.*, 436

U.S. 658 (1978)). "[T]o establish municipal liability under § 1983, a plaintiff must prove

that 'action pursuant to official municipal policy' caused the alleged constitutional injury."

*Cash v. County of Erie*, 654 F.3d 324, 333 (2d Cir. 2011) (quoting *Connick*, 563 U.S. at

60). Official municipal policy includes "the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick*, 563 U.S. at 61.

Here, Plaintiff alleges that the County violated his Fourteenth Amendment procedural due process rights by imposing the fine without sufficient notice and opportunity to be heard. (Dkt. 25 at 24). The parties agree that the County imposed the fine pursuant to official municipal policy—Local Law 10-1989. (Dkt. 31-5 at 17; Dkt. 36-3 at 21).[2] Accordingly, the Court must determine whether the procedures used by the County (through its agency, the Board) in imposing the fine comported with the basic requirements of due process.

The Due Process Clause of the Fourteenth Amendment was "intended to secure the individual from the arbitrary exercise of the powers of government . . . [and] serves to prevent governmental power from being used for purposes of oppression." *Daniels v. Williams*, 474 U.S. 327, 331 (1986) (quotations and citations omitted). To succeed on a due process claim, a plaintiff must establish that "he or she possesses a constitutionally protected interest in life, liberty, or property, and that state action has deprived him or her of that interest." *Valmonte v. Bane*, 18 F.3d 992, 998 (2d Cir. 1994).

---

[2]     In his second amended complaint, Plaintiff styles his due process claim as a claim under § 1983 for violation of state and federal due process. (Dkt. 25 at 24). Section 1983 provides a cause of action for deprivations of federal, and not state, rights. *See Wimmer*, 176 F.3d at 136. To the extent that Plaintiff seeks to bring a cause of action under Article I, section 6, of the New York State Constitution, for the reasons explained below, the Court declines to exercise supplemental jurisdiction over that claim.

"An essential principle of due process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Cleveland Bd. of Educ v. Loudermill*, 470 U.S. 532, 542 (1985) (quotation omitted). Notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). "If a party receives actual notice that apprises it of the pendency of the action and affords an opportunity to respond, the due process clause is not offended." *Baker v. Latham Sparrowbush Assocs.*, 72 F.3d 246, 254 (2d Cir. 1995).

> In determining the sufficiency of pre-deprivation procedures, courts consider:
>
> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976); *see, e.g.*, *Chase Grp. All. LLC v. City of N.Y. Dep't of Fin.*, 620 F.3d 146, 150 (2d Cir. 2010). "A predeprivation hearing has been required when 'the deprivation of property was pursuant to some established state procedure and 'process' could be offered before any actual deprivation took place to serve as a check on the possibility that a wrongful deprivation would occur." *Burtnieks v. N.Y.C.*, 716 F.2d 982, 987 (2d Cir. 1983) (quotation omitted). Here, the parties agree that the deprivation was pursuant to an established state procedure—the Board's statutory mandate under Local Law 10-1989. (Dkt. 31-5 at 21; Dkt. 36-3 at 21).

## B.    No Due Process Violation Occurred

The fine at issue in this case was imposed under Local Law 10-1989, which establishes a code of ethics for Erie County.    Among other things, it requires elected officials to "file with the Erie [C]ounty board of ethics an annual statement of financial disclosure . . . relat[ing] to the calendar year immediately preceding the year of filing." Erie County Local Law 10-1989, § 4.    It also provides for penalties for a reporting individual who "knowingly and willfully fails to file an annual statement of financial disclosure or who knowingly and willfully with intent to deceive makes a false statement or gives information which such individual knows or should have known to be false." *Id.* at § 9.    Such penalty may not exceed $10,000.    *Id.*

> Plaintiff claims that prior to imposing the contested fine, the Board never:
>
> (A) provided Plaintiff with written notice of the charge being considered against him or the complaint that was purportedly filed against him; (B) . . . docketed this matter as required by the Board's own Rules and Regulations; (C) interviewed Plaintiff or any other witnesses that Plaintiff is aware of; (D) provided Plaintiff with a hearing or an opportunity to provide witnesses or to confront accusers; (E) provided Plaintiff with a copy of the Board's Rules and Regulations (as is required by the Board's own Rules and Regulations); or (F) informed Plaintiff that he had the right to engage counsel or to appeal . . . .

(Dkt. 25 at ¶ 36).    Plaintiff argues that the County violated his due process rights by failing to provide him with (1) notice of the charges against him or (2) a pre-deprivation hearing. (Dkt. 31-5 at 15).

There is no factual dispute regarding the notice that Plaintiff received—the parties only dispute whether Schwartz's verbal communication with Matthews and the Board's letters to Plaintiff were sufficient to satisfy due process requirements.    Plaintiff contends

- 9 -

that he was entitled to receive "notice of the charges against him, an explanation of the evidence supporting those charges, and an opportunity for him to present his version of those events." (*Id.* at 17 (quoting *Mordukheav v. Daus*, 457 F. App'x 16, 21 (2d Cir. 2012)). Plaintiff also argues that the process he should have received is set forth in New York General Municipal Law § 813. (Dkt. 39 at 18-19). That statute provides that, in the event of a possible ethics violation, the authority policing ethical violations "shall notify the reporting person in writing, describe the possible or alleged violation of such code of ethics, local law, ordinance or resolution . . . and provide the person with a fifteen day period in which to submit a written response setting forth information relating to the activities cited . . . ." N.Y. Gen. Mun. Law ("GML") § 813(12). Plaintiff argues that GML § 813 is incorporated by reference in Local Law 10-1989, which provides that "[i]t is the intent of this code to establish reporting standards at least as high as those established in [GML § 813]."[3] (Dkt. 39 at 10). Additionally, Plaintiff contends that the Board violated due process in failing to comply with its own internal rules. (Dkt. 31-5 at 23; Dkt. 45 at 8).

Defendant responds that Plaintiff had actual notice of the Board's investigation, and a pre-deprivation hearing was not required under Second Circuit case law. (Dkt. 36-3 at 16, 19). Defendant also argues that any failure to follow state law procedures and/or the

---

[3]      As Defendant notes, GML § 813 was repealed in 2014. (Dkt. 40 at 7 n.3). However, because the Court concludes that the claimed violation of GML § 813 does not rise to the level of a due process violation, the Court does not need to resolve the issue of what impact, if any, the repeal of GML § 813 had on its purported incorporation by reference into Local Law 10-1989.

County's internal guidelines is not equivalent to a federal constitutional injury. (Dkt. 47 at 1).

### 1.     Plaintiff had Actual Notice of the Pendency of the Action

The Court agrees with Defendant that, based on the undisputed factual record, a reasonable factfinder would necessarily conclude that Plaintiff had actual notice of the pendency of the action. Plaintiff acknowledges that his legislative assistant was informed in November 2015 that the Board was "look[ing] into" his erroneous financial disclosure form. (Dkt. 25 at ¶¶ 27-28). Plaintiff also received a letter from Schwartz, dated December 7, 2015, requesting information regarding Plaintiff's ethics disclosure forms. (Pl. Stmt. at ¶ 27; Def. Stmt. at ¶ 27). That letter advised Plaintiff that the Board was investigating his 2013 ethics disclosure form, and that the Board took "no position . . . with respect to . . . whether any violations of the Code of Ethics exist[ed]." (Dkt 25-1 at 2). The Board provided Plaintiff an opportunity to respond and to have any questions answered. (*Id.*). Plaintiff exchanged a number of letters with the Board before the Board's final determination was made. (*See* Dkt. 14-6; Dkt. 14-7; Dkt. 14-8; Dkt. 14-9; Dkt. 25-1 at 56-57; Dkt. 25-1 at 59).

Plaintiff's assertion that the Board's December 7, 2015, letter provided him "at best . . . notice of a nonspecific inquiry" but failed to apprise him of the charges that were being considered is not supported by the evidence. (*See* Dkt. 31-5 at 17). Before the Board's December 7, 2015, letter to Plaintiff, Plaintiff filed an amended 2013 financial disclosure form. (Pl. Stmt. at ¶ 25; Def. Stmt. at ¶ 25). The Board's December 7, 2015, letter is unmistakably related to this issue, inasmuch as it specifically states that "issues were raised

- 11 -

by a third-party with respect to [Plaintiff's financial disclosure form's] accuracy." (Dkt. 14-5 at 2). Furthermore, in Plaintiff's January 14, 2016, letter to the Board in response to its December 7, 2015, letter, Plaintiff stated that he "learned of the error in [his] 2013 Disclosure Filing . . . during [his] reelection campaign." (Dkt. 14-6 (Ex. 6)). Plaintiff went on to explain that he "had misread the 'when-as' dates regarding [his] debts outstanding." (*Id.*). In other words, Plaintiff clearly understood that the Board was investigating the accuracy of his 2013 financial disclosure form and was afforded an opportunity to submit all relevant information to the Board.

The Board completed its investigation, notified Plaintiff of its conclusion that a violation of Local Law 10-1989 had occurred by reason of Plaintiff's false filing, assessed a $500 fine, and advised Plaintiff of his right to request reconsideration of that determination (which Plaintiff then did). (Dkt. 14-7; Dkt. 14-8). These undisputed facts conclusively demonstrate that Plaintiff had actual notice of the pendency of the action against him and was provided a way to respond (and he did so respond). Thus, Plaintiff's notice was constitutionally sufficient. *See, e.g., United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 272 (2010) (actual notice "more than satisfie[s]" a party's right to due process); *Reed v. Medford Fire Dep't, Inc.*, 806 F. Supp. 2d 594, 615 (E.D.N.Y. 2011) ("[I]f a party receives actual notice that apprises it of the pendency of the action and affords an opportunity to respond, the due process clause is not offended.") (quoting *Baker*, 72 F.3d at 254); *Lopes v. United States*, 862 F. Supp. 1178, 1188 (S.D.N.Y. 1994) ("[W]here actual notice of the impending forfeiture is found there is no due process violation.").

## 2.     No Pre-Deprivation Hearing was Required

The Court turns next to the question of whether Plaintiff was entitled to a pre-deprivation hearing prior to the imposition of the fine. Plaintiff argues that "when [a] deprivation is pursuant to an established state procedure, the state can predict when it will occur and is in the position to provide a pre-deprivation hearing." (Dkt. 31-5 at 19 (quoting *Rivera-Powell v. NYC Bd. of Elections*, 470 F.3d 458, 465 (2d Cir. 2006)). However, Plaintiff misreads *Rivera-Powell* in arguing that a pre-deprivation hearing is *required* when a deprivation occurs pursuant to an established state procedure. Rather, *Rivera-Powell* addressed the distinct question of whether "the existence of a meaningful post-deprivation remedy . . . would automatically satisfy procedural due process." 470 F.3d at 465. The Second Circuit explained that when a deprivation is pursuant to state procedure, "the availability of post-deprivation procedures will not, *ipso facto*, satisfy due process." *Id.* at 465 (quoting *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 880 (2d Cir. 1996)). However, that does not mean that a pre-deprivation hearing is required in every case involving established state procedures. Instead, in the event of such a deprivation, courts must determine what process was due by balancing the factors outlined in *Mathews*. *See id.* at 466 (if the court "were to find that the Board's decision was part of an established state procedure, . . . [it] would merely go on to determine what process was due"). Indeed, even where "the alleged deprivation occurred as a result of established state procedures," in certain circumstances, "the plaintiff's ability to pursue an Article 78 proceeding may provide him or her with all the process that is required." *Yaman v. D'Angelo*, 206 F. Supp. 2d 394, 399 (W.D.N.Y. 2002).

Defendant argues that it is well-settled that a pre-deprivation opportunity to make written submissions on disputed issues of fact and law, in conjunction with a post-deprivation opportunity for Article 78 review, satisfies due process. (Dkt. 36-3 at 19 (citing *Interboro Inst., Inc. v. Foley*, 985 F.2d 90 (2d Cir. 1993)). In *Interboro*, a junior college claimed that its due process rights were violated when the President of the Higher Education Services Corporation ("HESC") adopted, without an evidentiary hearing, the findings of the Office of the Comptroller of the State of New York ("OSC") that certain students had not met the school's entrance requirements. *Id.* at 91. As a result, the President disallowed more than $200,000 of Interboro's requested funds. *Id.* The Second Circuit held that the procedures provided were "more than ample under the *Mathews* test." *Id.* at 93.

> Interboro had an opportunity to submit a written response at every level of the OSC audit and HESC review. Interboro availed itself of each opportunity. Its responses included submissions to the OSC after the preliminary audit and the draft audit, a submission to [the President of HESC] after the final audit report and before [the President] had made a determination, and written submissions invited by [the President] in his letter demanding repayment. Moreover, as the OSC's reports indicate, Interboro's submissions were considered and responded to in subsequent reports. Finally, Interboro . . . could have commenced an Article 78 proceeding in the New York courts, but declined to do so.

*Id.*

The Court agrees with Defendant that in this case, as in *Interboro*, the procedures used were sufficient to satisfy the requirements set forth in *Mathews*. *Mathews* requires the Court to balance Plaintiff's interest, the risk of erroneous deprivation under the Board's procedures, the probable value of additional safeguards, and Defendant's interest. *See*

- 14 -

*Mathews*, 424 U.S. at 335; *Chase Grp. All.*, 620 F.3d at 150. Plaintiff had the opportunity to present evidence to the Board regarding his ethics disclosure form. (Pl. Stmt. at ¶ 27; Def. Stmt. at ¶ 27). Plaintiff responded to the Board's December 7, 2015, letter, arguing that he merely "misread the 'when-as' dates regarding any outstanding debts" in completing the contested financial disclosure form. (Dkt. 14-6 (Ex. 6)). The Board then assessed the fine and provided Plaintiff an opportunity to request reconsideration. (Dkt. 14-7 (Ex. 7)). The Board rejected Plaintiff's requests for reconsideration. (Dkt. 14-9 (Ex. 9); Dkt. 25-1 at 56-57 (Ex. G)). Although Plaintiff did not do so, he could have then filed a special proceeding under Article 78 of the New York Civil Practice Law & Rules.

Any reasonable application of the *Mathews* factors demonstrates that a full evidentiary hearing was not required on these facts. While Plaintiff indisputably has an interest in the deprivation of his money, there is a low risk of erroneous deprivation attendant with the procedures used by the Board. Plaintiff was afforded multiple opportunities to present evidence and arguments on his own behalf and has not identified any information that the Board should have had before it but did not. Indeed, beyond conclusory assertions, Plaintiff fails to elucidate *any* risk of erroneous deprivation which would suggest that a hearing, or an opportunity to "confront [his] accusers" (*see* Dkt. 25 at ¶ 36) was necessary. The Court notes that it is undisputed that Plaintiff admitted to the Board he had erred in filling out the financial disclosure form. (*See* Dkt. 14-6). Indeed, the heart of the disagreement between Plaintiff and the Board has nothing to do with the underlying facts, but with the *mens rea* required for imposition of a fine under Local Law 10-1989, which is a legal dispute.

- 15 -

Plaintiff had ample opportunity to engage with the Board prior to being fined, and was permitted to submit his factual and legal arguments on multiple occasions. These procedures satisfied Plaintiff's right to due process. Under these circumstances, no reasonable factfinder could conclude that additional procedural safeguards would have enhanced the quality of the decision-making. *Cf. Langton v. Town of Chester*, 168 F. Supp. 3d 597, 607 (S.D.N.Y. 2016) (finding a high risk of erroneous deprivation because the plaintiff was not permitted to address the board before being terminated, and "[c]onsequently, [the plaintiff's] interests were not represented during the . . . deliberations").

Moreover, Defendant has a significant interest in the speedy and efficient determination of ethical violations by the Board. This interest would be substantially hampered by requiring full evidentiary hearings in every instance. *See Interboro*, 985 F.2d at 92 ("To require an evidentiary hearing that would be entirely duplicative and essentially meaningless would impair the review procedures."). "The purpose of a pre-deprivation hearing is to ensure that decision-makers have before them the claimant's legal arguments and do not act on a one-sided or otherwise incomplete factual presentation." *Id.* The Board's procedures provided Plaintiff "a meaningful opportunity to be heard" through written submissions. *See id.* Thus, a full evidentiary hearing was not required. *See id.* (refusing to "attach a talismanic significance to the ability of a pre-deprivation evidentiary hearing" and holding the plaintiff's ability to make pre-deprivation written submissions sufficient to comply with due process).

### 3. **Failure to Comply with State Law and Internal Regulations is not a Constitutional Injury**

The Court also rejects Plaintiff's argument that the Board violated his due process rights because it did not adhere to the process outlined in GML § 813, Local Rule 10-1989, and the County of Erie Board of Ethics Rules and Regulations (the "Rules and Regulations"). With respect to GML § 813 and Local Law 10-1989, the failure to follow state law procedures is not equivalent to a federal constitutional injury. *Tallman v. Cty. of Chautauqua*, 335 F. App'x 92, 94 (2d Cir. 2009) ("[A] public official's failure to follow state law procedures . . . is not equivalent to a federal constitutional injury."). As the Second Circuit stated in *Tallman*, such a claim "is properly pursued in state court." *Id.* at 94; *see also Hyman v. Holder*, No. 96 CIV. 7748 (RCC), 2001 WL 262665, at *6 (S.D.N.Y. Mar. 15, 2001) (holding claims that defendants failed to follow prison regulations were claims for violations of state law and did not give rise to a federal constitutional claim); *cf. Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984) ("[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law.").

With respect to the Rules and Regulations, the Court agrees with Defendant that, assuming that the Board did ignore its internal rules, there was no due process violation. In support of his position, Plaintiff cites a number of cases for the proposition that a government agency that violates its own internal regulations may violate due process. However, the cases Plaintiff relies on do not compel the conclusion he urges the Court to reach.

In *McDarby v. Dinkins*, 907 F.2d 1334 (2d Cir. 1990), a retired police officer alleged that the pension fund Board of Trustees violated due process when it allegedly failed to follow the applicable provisions of the Administrative Code in determining the level of disability pension to which he was entitled. *Id*. at 1337. Although the court questioned whether the Board had satisfied the Administrative Code, it concluded that "[a] breach of procedural requirements does not create a due process violation unless an individual was 'denied a fair forum for protecting his state rights.'" *Id*. (quoting *Atencio v. Bd. of Educ*., 658 F.2d 774, 779-80 (10th Cir. 1981)). The court explained that "a contrary rule would bring within the scope of section 1983 myriad claimed violations of local laws, thus confusing the separate provinces of state and national laws that are central to our federal system." *Id*. The *McDarby* court concluded that the procedures employed by the Board of Trustees satisfied the minimal due process requirements of notice and hearing. *Id*. at 1338 ("[T]he Medical Board physically examined [the plaintiff], received written submissions that were proffered on his behalf, reviewed his medical records, and reconsidered its original adverse determination upon his request. Due process requires no more."). The decision in *McDarby* fully supports the conclusion that due process was satisfied in the instant case, where similar procedures (namely, the consideration of written submissions and the opportunity for reconsideration) were followed.

*Oladokun v. Ryan*, No. 06 CV 2330 KMW, 2010 WL 3910578 (S.D.N.Y. Sept. 30, 2010), and *D'Alessandro v. Mukasey*, 628 F. Supp. 2d 368 (W.D.N.Y. 2009) also do not compel the conclusion that Plaintiff was entitled to process that he did not receive. In *Oladokun*, the plaintiff, a Nigerian citizen, was disenrolled from a state university and then

deported for failure to maintain his student status. 2010 WL 3910578, at *1. The plaintiff

challenged the disciplinary procedure employed by the university, arguing that he was

deprived of due process by the university's failure to provide him sufficient notice in

convening the disciplinary hearing board. *Id.* at * 6. The court agreed that the plaintiff's

due process rights were violated when the board advised him that a hearing would occur

on a particular date but then held the hearing two days after that date. *Id.* at *7. The court

concluded that the university "failed to provide as much notice as is practicable to inform

[the plaintiff] of the date of the proceedings against him." *Id.* (internal quotation marks

omitted). The court additionally held that the university deprived the plaintiff of sufficient

process by violating its own internal regulations, insofar as it failed to provide sufficient

notice and disenrolled the plaintiff absent any evidentiary basis. *Id.* at *9. However, the

*Oladokun* court noted that "not every deviation from a state agency's regulations is of

constitutional significance" and that "[o]nce the constitutional minima have been satisfied

. . . a state agency's non-compliance with promised, yet 'gratuitous procedural protections'

does not constitute a due process violation." *Id.* at *8 (quoting *Levitt v. Univ. of Tex. at El

Paso*, 759 F.2d 1224, 1231 (5th Cir. 1985)).

In *D'Alessandro*, the petitioner filed a petition for a writ of habeas corpus

challenging his continued detention. 628 F. Supp. 2d at 373. Among other things, the

petitioner argued that the government had violated his due process rights by failing to

comply with its internal regulations and procedures. *Id.* at 388. The court agreed,

explaining that the regulations at issue "were drafted to reflect the concerns of the [Supreme

Court in *Zadvydas v. Davis*, 533 U.S. 678 (2001)] and provide necessary procedural

safeguards to ensure the detention of an alien beyond the removal period comports with due process requirements." *Id.* at 394 (quotation omitted). The regulations at issue in that case "d[id] not merely facilitate internal agency housekeeping, but rather afford[ed] important and imperative procedural safeguards to detainees." *Id.* (quotation omitted).

This case differs from *Oladokun* and *D'Alessandro* in that any violation of the Board's Rules and Regulations did not deprive Plaintiff of his rights under the Due Process Clause, for all the reasons previously discussed. Failure to follow internal rules does not, in and of itself, give rise to a federal due process violation. As set forth above, the record demonstrates that regardless of whether the Board adhered to the Rules and Regulations, it provided Plaintiff with the requisite notice and opportunity to be heard. No reasonable trier of fact could find to the contrary. Therefore, Plaintiff's motion for summary judgment is denied with respect to his federal due process claim, and Defendant's motion for summary judgment is granted with respect to that claim.[4]

---

[4]     Plaintiff argues in his post-argument submission that should the Court deny his motion for summary judgment, it should permit the parties to engage in discovery and allow Plaintiff an opportunity to amend his pleading to assert an equal protection claim. (Dkt. 45 at 7). As to discovery, the record before the Court is sufficient to conclude that summary judgment is appropriate at this stage of the proceedings. Furthermore, Plaintiff's belated request to amend the complaint is procedurally defective under the Local Rules of Civil Procedure. *See Wi3, Inc. v. Actiontec Elecs.*, 71 F. Supp. 3d 358, 363 (W.D.N.Y. 2014) (finding request for leave to amend defective for failure to comply with Local Rules of Civil Procedure); *see also Food Holdings Ltd. v. Bank of Am. Corp.*, 423 F. App'x 73, 76 (2d Cir. 2011) (finding district court did not abuse its discretion in denying leave to amend complaint when request to amend was made "on the final page of their brief in opposition to defendants' motion to dismiss, in boilerplate language and without any explanation as to why leave to amend was warranted" and collecting cases). Local Rule 15(a) provides that "[a] movant seeking to amend or supplement a pleading must attach an unsigned copy of the proposed amended pleading as an exhibit to the motion," and Local Rule 15(b) requires parties represented by counsel to identify the proposed amendments

## III.    Plaintiff's State Law Claims

The Court, having dismissed Plaintiff's federal claims, declines to adjudicate Plaintiff's state law due process claim and his declaratory judgment claim. When a district court has "dismissed all claims over which it had original jurisdiction," then "the district court may, at its discretion, exercise supplemental jurisdiction over state law claims . . . [even though] it cannot exercise supplemental jurisdiction unless there is first a proper basis for original federal jurisdiction." *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996).    Supplemental jurisdiction "is a doctrine of flexibility, designed to allow courts to deal with cases involving pendant claims in the manner that most sensibly accommodates a range of concerns and values." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). The Court's exercise of this discretion is governed by 28 U.S.C. § 1367 ("§ 1367"):

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.  Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367(a).  Under § 1367(c):

> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—

---

"through the use of a word processing 'redline' function or other similar markings . . . ." L.R. Civ. P. 15(a), (b).  Because Plaintiff has failed to comply with the Local Rules, the Court exercises its discretion in denying this "cursory or boilerplate request[] . . . made solely in a memorandum in opposition" to the motion for summary judgment. *Malin v. XL Capital, Ltd.*, 312 F. App'x 400, 402 (2d Cir. 2009) (citation omitted).

(1)      the claim raises a novel or complex issue of State law,

(2)      the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3)      the district court has dismissed all claims over which it has original jurisdiction, or

(4)      in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

*Id.* § 1367(c). "[T]he discretion implicit in the word 'may' in subdivision (c) of § 1367 permits the district court to weigh and balance several factors . . . ." *Purgess v. Sharrock*, 33 F.3d 134, 138 (2d Cir. 1994). After dismissing all federal claims, the district court must "reassess its jurisdiction over the case by considering . . . judicial economy, convenience, fairness, and comity." *Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 56 (2d Cir. 2004). Therefore,

> [i]f . . . the dismissal of the federal claim occurs late in the action, after there has been substantial expenditure in time, effort, and money in preparing the dependent claims, knocking them down with a belated rejection of supplemental jurisdiction may not be fair. Nor is it by any means necessary.

*Purgess*, 33 F.3d at 138 (internal quotation marks omitted).

In this case, the Court has dismissed the sole remaining claim over which it has original jurisdiction—Plaintiff's federal due process claim.[5] Plaintiff is a citizen of New

---

[5]      Plaintiff's declaratory judgment claim cannot be the basis for federal jurisdiction. "[T]he Declaratory Judgment Act does not—and cannot—confer subject matter jurisdiction." *U.S. Dep't of Treasury v. Official Comm. of Unsecured Creditors of Motors Liquidation Co.*, 475 B.R. 347, 357 (S.D.N.Y. 2012) (citing *E.R. Squibb & Sons, Inc. v. Lloyd's & Cos.*, 241 F.3d 154, 177 (2d Cir. 2001)). Moreover, other than incorporating Plaintiff's federal due process claim, Plaintiff's request for a declaratory judgment relates solely to the adjudication of claims based on state law.

York; Defendant is a municipal corporation in New York. (Dkt. 8 at 1). In the absence of the federal claims, the Court lacks original subject matter jurisdiction over the remaining claims because there is no diversity of citizenship between the parties. *See* 28 U.S.C. § 1332. Defendant asks this Court to decline to hear Plaintiff's state law claims because those claims would require the Court to "engage in the interpretation of a novel and complex issue of first impression under New York state law." (Dkt. 36-3 at 22).

Judicial economy weighs in favor of dismissing the supplemental state law claims. This case is in its early stages. No discovery has occurred. Thus, the parties have not expended substantial time, money, or effort in preparing the state law claims. *See Purgess*, 33 F.3d at 138 (citation omitted). The Court's refusal to exercise supplementary jurisdiction is also not "belated" in any way. *See id.* And, given this Court's significant civil and criminal dockets, the parties may be better served by a state court which can decide the case in a timely and efficient manner.

Additionally, as Defendant argues, the principle of comity suggests that this case should be resolved in state court. Plaintiff asks the Court to decide, *inter alia*, whether Local Law 10-1989 is "*ultra vires*, invalid, and unenforceable because it deviates from state law." (Dkt. 25 at ¶ 136). This determination involves complex issues of state law, better addressed by state courts in the first instance.

No factor weighs in favor of an exercise of supplemental jurisdiction. Therefore, the Court declines to exercise such jurisdiction over Plaintiff's state law and declaratory judgment claims.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment (Dkt. 31) is denied, Defendant's motion for summary judgment (Dkt. 36) is granted as to Plaintiff's federal due process claim, and the Court declines to exercise supplemental jurisdiction over the remaining causes of action. The Clerk of Court is directed to close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated: September 26, 2018
       Rochester, New York